IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ALVIN RUSSELL,           )
                         )
     Plaintiff,          )
                         )
v.                       )
                         )    CASE NO. CV408-058
WILLIAMS, Warden, THOMAS,)
Deputy Warden, DOCTOR FOGAM,)
Medical Director, DOCTOR AWE,)
Deputy Medical Director, )
                         )
     Defendant.          )
                         )

## O R D E R

Before this Court is the Magistrate Judge's Report and Recommendation dismissing Plaintiff's claims on § 1915A review. (Doc. 15.) Also before this Court is Plaintiff Alvin Russell's Objections to the Report and Recommendation. (Doc. 17.) After careful consideration, this Court **ADOPTS IN PART** the Report and Recommendation of the Magistrate Judge. However, this Court finds that Plaintiff's § 1983 claim against Dr. Fogam for disregarding the orders of a specialist is a colorable legal claim and, therefore, should not be dismissed at this early stage. Plaintiff's other claims are **DISMISSED**.

## BACKGROUND

Russell's problems began when he was transferred to Coastal State Prison ("CSP").[1] (Doc. 1 at 4.) Shortly after arriving at CSP, Russell noticed a painful twitching in his neck and promptly sought medical attention. He was given ibuprofen by a nurse and was scheduled to see a doctor. Two weeks later, Russell saw Dr. Awe who treated him with a Benadryl shot and prescribed ibuprofen. The treatment failed to solve the problem or relieve the pain, and Russell's condition worsened. (Id. at 5.) Russell developed hot flashes and night sweats, and his pain became severe. Russell again sought medical attention and was administered another Benadryl shot. The shot provided no relief. Russell's pain continued to worsen to the point that he could no longer bathe, lift anything, or sleep.

In light of the continued pain, Russell made another appointment with the doctor. While waiting for that appointment, Russell had an episode of acute neck pain. Russell was taken to the medical clinic, where a nurse told him his pain was in his mind. However, after repeated complaints, Russell's neck was x-rayed. (Id. at 6.) Dr. Awe then ordered a third Benadryl shot and scheduled another appointment with Russell for three weeks from that date.

---

[1] On § 1915A review, the allegations in the complaint are taken as true. Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).

When that appointment occurred, Dr. Awe diagnosed the muscle spasm as being caused by Risperdal (an antipsychotic medication prescribed by a prior doctor) and scheduled Russell to see a specialist. In addition, Dr. Awe prescribed Cogentin for the spasm. However, the Cogentin was ineffective, leading Russell to submit several more medical requests while waiting to see a specialist. In response to his requests, Russell was first seen by a nurse, and then by Dr. Awe. Dr. Awe instructed Russell to continue to take the Cogatin. However, Dr. Awe changed Russell's prescription from Cogatin to Tylenol without informing him. Russell first learned of the change when he asked a nurse why he was continuing to receive the ineffective Cogatin treatment.

When Russell was seen by a specialist, the specialist prescribed Robaxin for the pain and recommended physical therapy for the twitch. The specialist also scheduled a follow up appointment. As with the other pain medicines, the Roboxin did not help. Therefore, when Russell returned to CSP, he sought another appointment at the medical clinic and inquired about the physical therapy. Initially, he was told that his physical therapy appointment was approaching. (Id. at 7.) Yet, two weeks later, Russell had neither received therapy nor been seen at the clinic. He again inquired about his treatment, and was told that no appointment for physical therapy existed and that

3

his appointment at the medical clinic had been cancelled. In response, a new appointment with Dr. Awe was scheduled. When the appointment occurred, Dr. Awe assured Russell that he would be given both physical therapy and a follow up appointment with the specialist. Dr. Awe did not change the palliative care for Russell, deferring instead to the specialist to determine the next step in treating Russell's pain.

After an "unreasonable time," Russell was again taken to see the specialist. The specialist prescribed Baclofen for the pain and scheduled another follow up appointment. The Baclofen did not help with the pain, and Russell's condition continued to "deteriorate." (Id. at 8.) Russell then saw Dr. Awe, who prescribed Ultram for the pain and reassured Russell that he would receive the prescribed physical therapy.

When Russell saw the specialist again, the specialist decided Ultram "wasn't nothing" for Russell's pain and prescribed Darvocet instead. The specialist also gave Russell four Botox injections. It was at this time that Russell learned from the specialist's assistants that CSP lacked the facilities to provide physical therapy and that he would need to go to another facility for that treatment.

After about a week of continued pain, Russell realized he was not receiving the Darvocet. Russell then met with Dr. Awe, and inquired about the Darvocet and physical therapy. He was

4

informed that because Darvocet was a controlled substance, Dr. Awe's supervisor, Dr. Fogam, would have to approve the administration of the drug. Similarly, Russell was told physical therapy required Dr. Fogam's approval. Before Russell saw Dr. Fogam, he saw a third doctor,[2] who, like the specialist, recommended physical therapy, and told Russell she would rewrite the order for physical therapy because "it would probably do [him] some good."

When Russell later met with his mental health doctor, Dr. Stockfish, he still had neither met with Dr. Fogam nor received any physical therapy. Dr. Stockfish informed Russell that he was a month overdue to see the specialist.

Finally, Russell met with Dr. Fogam. (Id. at 9.) Dr. Fogam told Russell that Darvocet was a controlled substance and, therefore, "out of the question." He denied the physical therapy as well because it "cost[s] money" and he believed that "nothing" would provide Russell any relief.

Russell still suffers from the same muscle spasm and severe pain. Russell seeks compensatory and punitive damages, and "any additional relief this Court deems just, proper, and equitable." As Plaintiff is proceeding pro se, this Court liberally construes his pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Therefore, the Court will construe

---

[2] This doctor was substituting for Dr. Awe that day.

5

his latter request as a demand for injunctive relief requiring the prison to grant him the specialist's prescribed treatments.

## STANDARD OF REVIEW

Russell's Complaint is being screened under the Prison Litigation Reform Act for the purpose of identifying claims that are subject to immediate dismissal as frivolous, malicious, or legally insufficient. 28 U.S.C. § 1915A (requiring courts to identify legally cognizable claims by prisoners before allowing the suit to continue); see 42 U.S.C. § 1997e(c)(2) (applying the same standards to prisoner challenges to conditions of confinement). Under this section, "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the prisoner can prove no set of facts in support of his claim which would entitle him to relief." Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984). The Court considers Russell's Complaint under this standard.

## ANALYSIS

Russell brings two claims for deliberate indifference to his medical needs in violation of the Eighth Amendment's ban on cruel and unusual punishment. First, he alleges that Defendants were deliberately indifferent by disregarding the orders of the specialist. (Doc. 1 at 9-10.) Second, he alleges that the Defendants were deliberately indifferent by unreasonably

delaying his medical care.[3]  (Id.)  Russell's Complaint names four Defendants: (1) Mr. Williams, the Warden of CSP, (2) Mr. Thomas, the Deputy Warden of Care and Treatment at CSP, (3) Dr. Fogan, the Medical Director at CSP, and (4) Dr. Awe, a Medical Doctor at CSP.

I. **Claims Against the Wardens**

After careful consideration of the Plaintiff's Objections to the Magistrate Judge's Report and Recommendation, the Court concurs with the Magistrate Judge's conclusions as to both the Warden and the Deputy Warden. (Docs. 15 & 17.) The Court **ADOPTS** the reasoning and conclusion of the Magistrate Judge with respect to all claims against the wardens. Accordingly, these claims are **DISMISSED**.

II. **Claims Against Dr. Fogam**

This Court will next consider whether either of Plaintiff's claims against Dr. Fogam can pass § 1915A review.

---

[3] With respect to Plaintiff's claim for unreasonable delay, he claims, in part, that when his medication ran out he had to wait an "unreasonable time" before it was reordered. (Doc. 1 at 11.) The Court has carefully considered Plaintiff's Objections and concurs with the Magistrate Judge that Plaintiff has failed to allege basic facts surrounding this denial of medicine that make the claim colorable. (Doc. 15 at 15-16.) For example, Plaintiff does not allege who delayed the reordering of his medicine. Accordingly, Plaintiff's claim for unreasonable delay with respect to his medications is **DISMISSED**.

7

A.  **Deliberate Indifference to a Serious Medical Need Due to Improper Treatment**

It is well established that when the Government puts a private person into prison, it has an obligation to "provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted). The Supreme Court has stated that

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.

Id. at 103-04 (internal quotations and citations omitted). In short, deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment's prohibition on cruel and unusual punishment. Id. To state a claim for deliberate indifference to a serious medical need, a Plaintiff must first allege a serious medical need, and then assert facts that establish a defendant's deliberate indifference to that medical need. Mendel v. Doe, 888 F.2d 783, 787 (11th Cir. 1989).

1. **Serious Medical Need**

In examining a claim under Estelle, this Court first must determine if a serious medical need exists. Mendel, 888 F.2d at 787. For a need to be serious, it need not be life threatening. Estelle, 429 U.S. at 104; see Washington v. Dugger, 860 F.2d 1018 (11th Cir. 1988) (prisoner suffering from non-terminal Agent Orange disease incurred while in Vietnam War had a serious medical need for dermatological and palliative care). Severe pain is sufficient to satisfy the requirement of a serious medical need. Estelle, 429 U.S. at 104, Washington, 860 F.2d at 1021. Moreover, the fact that a prisoner's ailment may be incurable does not relieve the prison system of its obligation to provide palliative care. Washington, 860 F.2d at 1021.

Here, Plaintiff's Complaint alleges pain so serious that he could not bathe, lift anything, or sleep. (Doc. 1 at 5.) According to the Complaint, the specialist believed Plaintiff's pain was so severe that Ultram[4] "wasn't nothing" for his pain. (Doc. 1 at 5.) Ultram is a strong pain medication, and if it failed as a treatment, it is at least colorable that Plaintiff's pain was severe enough to constitute a serious medical need.

---

[4] Ultram is a drug prescribed for "moderate to moderately severe pain." Physician's Desk Reference, 2005 WL 4061873 (2005 ed.). If Ultram was ineffective at treating Plaintiff's pain, it is at least colorable that the pain in this case was greater than that which would be classified as "moderately severe."

9

Accordingly, this Court finds a colorable claim as to a serious medical need.

### 2. Deliberate Indifference

As Plaintiff has made a colorable assertion of a serious medical need, this Court must consider whether the facts, as alleged, could show deliberate indifference. Deliberate indifference can be proved in several ways. Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995). Two are especially appropriate for consideration in this case. First, "'[deliberate] indifference can be manifested by prison doctors in taking the easier and less efficacious route in treating an inmate.'" Washington, 860 F.2d at 1021 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)); see Estelle, 429 U.S. at 104 n.10. Second, "'[m]edical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the eighth amendment.'" Washington, 792 F.2d at 1058 (quoting Rogers, 792 F.2d at 1058). To meet these standards, a Plaintiff must show "that the official's actions were so grossly contrary to accepted medical practices as to amount to deliberate indifference." Howell v. Evans, 922 F.2d 712, 720 (11th Cir. 1991), vacated as settled, 931 F.2d 711, reinstated by

unpublished order (11th Cir. June 24, 1991);[5] see Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) ("We reaffirm our position . . . that grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference.").

At this stage, the Court must determine from Russell's allegations if there is any possible set of facts that would constitute deliberate indifference. The allegations are that Dr. Fogam refused to follow the specialist's orders because (1) he did not want to pay the cost of treatment; (2) he believed the treatment would not work because "nothing" would work; and (3) he did not want to put an inmate on narcotic pain killers.[6] (Doc. 1 at 10.)

---

[5] Although the order reinstating this Opinion was unpublished, the Eleventh Circuit recognized the reinstatement in Howell v. Burden, 12 F.3d 190, 191 n.* (11th Cir. 1994).

[6] This Court notes that the fact that prison doctors have provided some treatment in the form of non-narcotic pain medication such as Tylenol, Ibuprofin, and Ultram, and some care in the form of Benadryl shots, does not per se establish access to sufficient medical care. Mendel, 888 F.2d at 789 (citing West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978)) (providing inmate with aspirin for post-operative pain "may not have constituted adequate medical care"). As the Eleventh Circuit has explained, "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation. Hesitation does not mean, however, that the course of a physician's treatment of a prison inmate's medical . . . problems can never manifest the physician's deliberate indifference to the inmate's medical needs." Waldrop, 871 F.2d at 1035.

These alleged reasons for Dr. Fogam's medical decision provide at least two factual pathways to a showing of deliberate indifference. First, it is possible that Dr. Fogam's decision that "nothing" would work for Plaintiff was a grossly incompetent one under Howell. At least two medical experts—the specialist and Dr. Awe's substitute—believed physical therapy would provide relief. (See Doc. 1.) Moreover, Dr. Fogam's substitute treatment was not simply a different course of treatment, but a continuation of treatments known to be ineffective. (Id.) Furthermore, the fact that Dr. Fogam is a doctor neither makes his decisions per se reasonable nor limits the unreasonableness to normal medical malpractice. While it may be difficult for Plaintiff to show that Dr. Fogam's decision reaches that standard under Howell, it is not beyond a doubt that he will fail to do so. Therefore, on § 1915A review his claim against Dr. Fogam cannot be dismissed.

Second, even if no colorable set of facts existed to meet the Howell standard for gross incompetence, Plaintiff has alleged a colorable claim that Dr. Fogam manifested deliberate indifference by "taking the easier and less efficacious route in treating an inmate." Washington, 860 F.2d at 1021; see Estelle, 429 U.S. at 104 n.10. Russell has alleged that the decision to deny him necessary care, at least in some part, was due to the fact that Dr. Fogam wanted to save money. If Dr. Fogam

12

deliberately denied Russell necessary medical care solely to save money, it would be a direct violation of the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 245 (1983) ("If, of course, the government entity can obtain the medical care needed for a detainee only by paying for it, then it must pay.").[7] Indeed, as Justice Marshall explained in Estelle, "[i]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." 429 U.S. at 104.

Accordingly, this Court **REJECTS** the Magistrate Judge's Report and Recommendation with respect to this claim. The claim against Dr. Fogam for a violation of the Eighth Amendment by disregarding the specialist's orders is colorable.

### B. Deliberate Indifference Due to Unreasonable Delay

Plaintiff's argument for unreasonable delay is that Dr. Fogam took an unreasonable time in "seeing, treating and sending me back to the specialist." (Doc. 1 at 10.) The Court has carefully considered Plaintiff's Objections and concurs in the Magistrate Judge's reasoning and conclusions on this claim. Therefore, the Court **ADOPTS** the Report and Recommendation with respect to this claim. Accordingly, this claim is **DISMISSED**.

---

[7] This Court is not suggesting the CSP is expected to spare no expense in care, only that necessary care must be provided, and that it would not be proper to dismiss the claim without an explanation from Dr. Fogam as to how he arrived at the decision to ignore the orders of the specialist.

## III. Claims Against Dr. Awe

This Court will next consider whether either of Plaintiff's claims against Dr. Awe can pass § 1915A review.

### A. Deliberate Indifference to a Serious Medical Need Due to Improper Treatment

Plaintiff's claim for deliberate indifference centers on the decision to disregard the specialist's orders of physical therapy and narcotic pain killers. Plaintiff's Complaint concedes that the ultimate decision on these issues was made by Dr. Fogam and not Dr. Awe. In fact, Dr. Awe was following the orders of his superior by disregarding the specialist's orders. An implicit prerequisite to a claim of deliberate indifference in ignoring a specialist's orders is a decision by the doctor to ignore the orders. See Howell, 922 F.2d at 719-20 (discussing how to prove a doctor's actions amounted to deliberate indifference).

Here, Plaintiff's Complaint alleges that Dr. Fogam, not Dr. Awe, made the decision to disregard the specialist's orders. Taking the allegations in the Complaint as true, Dr. Awe simply followed the orders of his superior. Nothing suggests that the decision to disregard the specialist's orders came from Dr. Awe; to the contrary Dr. Awe seemed to believe the order for physical therapy would be followed. (See Doc. 1.) Therefore, Plaintiff

14

has not stated a colorable claim against Dr. Awe under this theory. This claim against Dr. Awe is **DISMISSED**.

B. **Deliberate Indifference Due to Unreasonable Delay**

After careful consideration of the Objections of the Plaintiff, this Court concurs with the Magistrate Judge that Plaintiff has failed to set forth facts under which he could prove deliberate indifference due to unreasonable delay in treatment. Accordingly, the Court **ADOPTS** the Report and Recommendations with respect to this claim. This claim is **DISMISSED**.

**CONCLUSION**

After careful consideration of the Magistrate Judge's Report and Recommendation and Plaintiff's Objections, the Court **ADOPTS IN PART** the Report and Recommendation of the Magistrate Judge. Plaintiff's only remaining claim is against Dr. Fogam for deliberate indifference to his serious medical need. All other claims are **DISMISSED**. It is **HEREBY ORDERED** that a copy of Plaintiff's Complaint and a copy of this Order shall be **SERVED** upon Defendant Fogam by the United States Marshall without prepayment of cost. Any Defendant that elects not to file a waiver of reply must file either a dispositive motion or an answer to the Complaint within **thirty (30) days** of the filing of the Waiver.

## INSTRUCTIONS TO DEFENDANTS

Because plaintiff is authorized to proceed in forma pauperis, service must be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(2). In most cases, the marshal will first mail a copy of the complaint to the defendant by first-class mail and request that the defendant waive formal service of the summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

## INSTRUCTIONS TO PLAINTIFF

It is further **ORDERED** that plaintiff shall serve upon defendant or, if appearance has been entered by counsel, upon defendant's attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendant or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting

forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a). Any paper received by a district judge or magistrate judge which has not been filed with the Clerk and which fails to include a caption or a certificate of service will be disregarded by the Court and returned to the sender.

Plaintiff is charged with the responsibility of immediately informing this Court of any change of address during the pendency of this action. Local Rule 11.1. Failure to do so may result in dismissal of this case. Local Rule 41.1.

Plaintiff is responsible for pursuing this case. For example, if plaintiff wishes to obtain facts and information about the case from defendants, plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26, et seq. Plaintiff does not need the permission of the Court to begin discovery. However, under Rule 26(f), plaintiff is under a duty to confer with opposing counsel to develop a plan of discovery and must do so before seeking discovery from any source. See Fed. R. Civ. P. 26(d), (f). If plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41.

Interrogatories and requests for the production of documents provide a practical method of discovery for pro se litigants. Fed. R. Civ. P. 33, 34. Interrogatories and requests

17

for production may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations that are not named as defendants. Interrogatories and requests for production shall not be filed with the court. Interrogatories are not to contain more than twenty-five questions. Fed. R. Civ. P. 33(a). If plaintiff wishes to propound more than twenty-five interrogatories to a party, plaintiff must have permission of the Court. Id. Fed. R. Civ. P. 33(a). In a request for production, plaintiff may request the opposing party to produce any designated documents for the purpose of inspection and copying. "The request shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity." Fed. R. Civ. P. 34(b). The request should specify a reasonable time and place (such as defendant's place of business) for making the inspection.

Should it become necessary to file a motion to compel discovery, Fed. R. Civ. P. 37, plaintiff should first contact the attorney for defendant to try to work out the problem; if the problem cannot be resolved, plaintiff must file a statement certifying that opposing counsel has been contacted in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A). Plaintiff has the responsibility

for maintaining his or her own records of the case. If plaintiff loses papers and needs new copies, plaintiff may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.

It is the plaintiff's duty to cooperate fully in any discovery which may be initiated by the defendant. Evasive or incomplete responses to discovery will not be tolerated and may subject plaintiff to severe sanctions, <u>including dismissal of this case</u>. Should the defendant endeavor to take plaintiff's deposition, plaintiff shall permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fifteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if plaintiff fails to respond to a motion to dismiss, the Court will assume that plaintiff does not oppose defendant's motion.

A response to a motion for summary judgment must be filed within twenty days after service of the motion. Local Rule 7.5,

56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposing statement. Should defendant file a motion for summary judgment, you are advised that you will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be met by reliance upon the conclusory allegations contained within the complaint. Should the defendant's motion for summary judgment be supported by affidavit, you must file counter-affidavits if you desire to contest defendant's statement of the facts. Should you fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in defendant's affidavits will be accepted as true and summary judgment will be entered against you pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 21st day of November, 2008.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA